[No. 12162.    Department Two.    July 30, 1914.]

THE STATE OF WASHINGTON, *on the Relation of Fred J. Chamberlain et al., Plaintiff,* v. I. M. HOWELL, *as Secretary of State, Defendant.*[1]

STATUTES—CONSTRUCTION—ENROLLED BILL.    In case of a conflict between the printed laws and an enrolled bill on file in the office of the secretary of state, the latter controls.

STATUTES—INITIATIVE MEASURES—PUBLICITY—COST OF PRINTING ARGUMENTS—STATUTES—CONSTRUCTION.    Upon proposing an initiative measure to be submitted to the people, the persons filing with the secretary of state an argument in support of the same to be printed in the state pamphlet, must, on demand by the secretary of state, deposit sufficient money to cover the increased cost of "paper for, and the printing and binding of, such argument," under 3 Rem. & Bal. Code, § 4971-26, expressly so providing, and Id., § 4971-27 providing that the cost of printing the pamphlets shall be paid from the money appropriated for printing for the secretary of state, provided: that the increased cost for such arguments shall be paid from the moneys deposited to cover the same, the balance thereof to be returned to the depositors.

SAME—COST OF PRINTING ARGUMENTS—STATUTES—CONSTITUTIONALITY.    3 Rem. & Bal. Code, §§ 4971-26, 4971-27, are not invalid for the reason that they require the persons filing arguments for or against initiative measures to deposit sufficient money with the secretary of state to cover the cost of paper for, and the printing and binding of, such argument; since the requirement is not an unreasonable one, and Const., art. 2, § 1, directing the legislature to provide methods of publicity of all laws and amendments to the constitution referred to the people with arguments for and against the same, does not prohibit the legislature from requiring a fee in such case.

FULLERTON, J., dissents.

Application filed in the supreme court July 14, 1914, for a writ of mandamus to compel the secretary of state to file and print an argument upon an initiative measure.    Denied.

*Govnor Teats,* for relators.

*The Attorney General* and *Scott Z. Henderson, Assistant,* for defendant.

[1] Reported in 142 Pac. 1.

MOUNT, J.—This is a proceeding by mandamus to compel the secretary of state to accept for filing and print the argument in favor of what is known as "Initiative Measure No. 6."

The relators contend that they are entitled to have the secretary of state file, print, and distribute, at the expense of the state, the argument presented in favor of this initiative measure.

The petition recites that the relators have presented to the secretary of state an argument, and have tendered the sum of $31.50 as a sufficient amount to cover the increased cost of paper for the printing and binding of the argument; and that the secretary of state has refused to receive that sum and file the argument, but insists on $200 per page for said argument, to be paid by the proponents of the measure. No question is made upon the facts recited in the petition for the writ.

The initiative measure has been filed with the secretary of state. The secretary of state insists that he is entitled to demand, of the proponents of the bill who offer an argument in support thereof, a sufficient amount of money to cover the cost of the paper, printing, and the binding of such argument in pamphlet form. This is the sole question presented.

The constitution under which this initiative measure was filed provides at § 1, article 2, as follows:

"The legislative authority of the state of Washington shall be vested in the legislature, consisting of a senate and house of representatives, which shall be called the legislature of the state of Washington, but the people reserve to themselves the power to propose bills, laws, and to enact or reject the same at the polls, independent of the legislature, and also reserve power, at their own option, to approve or reject at the polls, any act, item, section, or part of any bill, act or law passed by the legislature.

"(a) Initiative: The first power reserved by the people is the initiative. Ten per centum, but in no case more than fifty thousand, of the legal voters shall be required to propose any measure by such petition, and every such petition shall include the full text of the measure as proposed. Initiative petitions shall be filed with the secretary of state not less than

four months before the election at which they are to be voted upon, or not less than ten days before any regular session of the legislature. If filed at least four months before the election at which they are to be voted upon, he shall submit the same to the vote of the people at the said election. . . . All such petitions shall be filed with the secretary of state, who shall be guided by the general laws in submitting the same to the people until additional legislation shall especially provide therefor. This section is self-executing, but legislation may be enacted especially to facilitate its operation.

"The legislature shall provide methods of publicity of all laws or parts of laws, and amendments to the constitution referred to the people with arguments for and against the laws and amendments so referred, so that each voter of the state shall receive the publication at least fifty days before the election at which they are to be voted upon."

Pursuant to these provisions, the legislature of 1913 passed an act to facilitate the operations of the provisions of that section, and to prevent fraud, and providing penalties for a violation thereof. Section 26 of this act, found on page 431, Laws of 1913 (3 Rem. & Bal. Code, § 4971-26), provides, that the person filing any initiative petition proposing a measure, shall have the right, at the time of filing such petition, or within ten days after such petition has been accepted and filed, to file with the secretary of state for printing and distribution, arguments advocating the proposed measure; and that any person may, within 20 days, file an argument in opposition to such measure; provided, that no more than two separate arguments advocating such measure, and not more than three separate arguments in opposition thereto, shall be printed and distributed at the expense of the state. The section then provides a method of selecting arguments in case more arguments are filed with the secretary of state than above stated. It also provides that each argument, either for or against the measure, shall not exceed two pages of the pamphlet required to be published by the state, and then provides as follows:

"The person or organization filing such argument shall at the time of filing the same deposit with the secretary of state sufficient money, the amount to be estimated by the secretary of state, to cover the increased cost of paper for *and* the printing and binding of such argument."

In the law, as printed on page 432, the word "and," underscored in the foregoing quotation, is omitted. This word is in the enrolled bill on file in the office of the secretary of state, and is therefore the law. *State ex rel. Reed v. Jones,* 6 Wash. 452, 34 Pac. 201, 23 L. R. A. 340.

Section 27 (Id., § 4971-27), of the same act provides for the publication of the pamphlet by the secretary of state, and what it shall contain, and then provides as follows:

"The cost of printing and binding such pamphlets shall be paid from the money appropriated for printing for the secretary of state; provided, the increased cost of printing and binding such arguments shall be paid from the moneys deposited to cover the same and the balance of any such moneys, if any, and the moneys deposited for arguments not printed shall be returned to the persons depositing it respectively. Such number of pamphlets shall be printed as shall fill the requirements as to distribution hereinafter provided. . . ."

Sections 26 and 27 contain a clear statement to the effect that the person filing an argument in support of an initiative measure must deposit with the secretary of state sufficient money to cover the increased cost of paper for, and the printing and binding of such argument. These two sections are plain to the effect that it is the duty of the secretary of state to pay the cost of printing and binding the pamphlets, so far as the initiative measure itself is concerned, out of the money appropriated for printing. But the increased cost of paper and of printing and binding such arguments must be paid for by the person proposing the argument in favor of the measure. Relators apparently concede that the secretary is authorized to collect for the paper because they allege that they tendered a sum sufficient to cover this item.

The constitutionality of this act is not attacked directly. Relators apparently question the validity of §§ 26 and 27 by a contention to the effect, that because the constitution says, "The legislature shall provide methods of publicity of all laws or parts of laws, and amendments to the constitution referred to the people with arguments for and against the laws and amendments so referred," that such arguments stand on the same plane as the initiative measures, and that, if one is filed without a fee for printing and binding, the other must also be filed without such fee; that, if one is published at the expense of the state, the other must also be published at the expense of the state, and not at the expense of the proponents of the measure, or of the person offering the argument.

The constitution appears to make no distinction between the publicity of the initiative measure itself and the publicity of the arguments for or against such measure or proposed law. But there is nothing in the constitution prohibiting the legislature from requiring a fee for filing, printing, or binding either the proposed measure, or the arguments. It is clear that, where the constitution does not prohibit the legislature from requiring a fee in such case, it is within the power of the legislature to require a fee. This is elementary and no authority is needed to sustain it. The constitution does not, in terms or inferentially, require the state to bear the expense of the publication of these arguments. It simply requires the legislature to provide methods of publicity, without limitation as to fees. The legislature, therefore, may require the proponents of any measure to pay the expense of the arguments or of the distribution or of the publicity. It has not, however, seen fit to do so. It has made an appropriation to bear the expense of printing the bill itself, and of distributing the pamphlets to the voters in the state, but it has required a fee to be paid covering the increased cost for paper, publishing and binding arguments proposed in favor of the bill. This is not an unreasonable requirement, and no pro-

vision of the constitution is cited to us which proclaims such provisions invalid.   These provisions must therefore be held valid.

We are of the opinion that the secretary of state complied with the law when he demanded the cost of the paper and of printing and binding these arguments, for the statute expressly so provides.

The writ is therefore denied.

CROW, C. J., MORRIS, and PARKER, JJ., concur.

FULLERTON, J. (dissenting)—I am unable to concur in the foregoing opinion.   In my judgment, the construction there put upon the statute permits the submission of an initiative measure to the vote of the electors in a manner violative of the constitution.   It will be observed, from the constitutional provision quoted, that the requirement of the constitution is that publicity be given to both the measure submitted and the arguments filed for and against the same, and that no distinction is made between the measure itself and the argument in this regard, but that both are treated as if of the same degree of importance.   It will be observed, further, that the language of the constitution is mandatory; that the requirement is that the legislature *shall* provide methods of publicity of the measures and arguments submitted to the electors, leaving no discretion in that body as to whether or not it will comply with the requirement.   From these provisions of the constitution, it seems to me to follow, as of course, that any act of the legislature relating to giving publicity to an initiative measure which fails to provide for the giving of the same publicity to the arguments for and against the measure as it does to the measure itself is violative of the constitutional provision.   As construed by the majority, this is the effect of the act in question.   It requires the giving of publicity to the measure itself, but leaves it optional with the proponents of the arguments whether or not publicity shall be given to them; that is, they are given publicity if the costs

thereof are paid by the proponents, otherwise they are not. As I say, this is not, in my judgment, a compliance with the constitutional provision; as that instrument not only contemplates, but declares in terms, that publicity shall be given to the arguments for and against a measure as well as to the measure itself.

I grant the proposition that the legislature may make the payment by the proponents of a measure of all or of some part of the costs of submitting it to the electors a condition precedent to its submission, and I grant, also, that it may reasonably regulate the length of the arguments and the number that may be submitted. This is necessary in the interests of the public revenues, as it is easy to see that, if an unrestrained license was given the citizens in this regard, the costs of submitting a measure might be made to exceed the possible revenues of the state. But this is not the question at issue. The question at issue is, Is it a due compliance with a constitutional provision which requires publicity to be given to an initiative measure with the arguments for and against the same, to give publicity to the measure without such arguments? I think it is not, and that the majority are in error in deciding otherwise.