MYRTLE BUCHMEIER et al., appellants, v. LOUIS L. PICKETT, Scott County Superintendent of Schools, et al., appellees.

No. 52068.

(Reported in 142 N.W.2d 426)

May 3, 1966.

Doerr, Dower & Rehling, of Davenport, for appellants.

David P. Miller, County Attorney, and Norman M. Peterson, Assistant County Attorney, of Davenport, for appellee Community School District of Walcott and its individual members.

Lane & Waterman, of Davenport, for appellee Davenport Community School District and its individual members.

MOORE, J.—This is a declaratory judgment action by a group of Davenport electors contending the petition objecting to the merger of the Community School District of Walcott with The Davenport Community School District was valid and sufficient to defeat the proposed merger under section 275.40, Code, 1962. The trial court entered a decree and judgment against plaintiffs from which they have appealed. We affirm.

The sole issue presented in the trial court and here is whether references in section 275.40 to "eligible voters" and "voters" should be construed to read "eligible electors" and "electors".

What is now section 275.40 was enacted as chapter 192, Laws of the Fifty-eighth General Assembly, as an amendment to chapter 275, Code, 1958. It provides:

"Alternate merger procedure. In addition to the procedure set forth in sections 275.12 to 275.23, inclusive, relating to the organization of a proposed school district, a school district not operating a high school that is contiguous to a high school district may merge with said high school district in the following manner:

"1. A petition signed by at least twenty percent of the qualified voters of such school district not operating a high school, proposing that said district be included in said high school district, shall be filed with the county superintendent of the county which has jurisdiction over the high school district and a duplicate copy with the school board of the high school district.

"2. The school board of the high school district involved shall, after the filing of said petition, take action at the next regular board meeting or a special meeting called for that purpose, agreeing or refusing to accept said school district not operating a high school into said high school district and filing a record of such action with said county superintendent.

"3. If the said school board of the high school district agrees to accept said school district not operating a high school, said county board shall approve or disapprove said merger proposal. The county superintendent shall fix a time and place for filing objections, cause one notice thereof to be published at least ten days prior thereto in a newspaper published within the high

school district or if none is published therein then in a newspaper of general circulation in the high school district; and in the event of the filing prior to said time of a petition signed by voters in the high school district involved equal in number to at least twenty percent of the number of eligible voters or four hundred voters, whichever is the smaller number, objecting to such board action, the entire action shall be void and in order to effect said merger it shall be necessary to proceed as provided in section 275.12. In case of a controversy over county plans which would affect a proposed merger, said merger must have the approval of the state board of public instruction which decision shall be final and no further action shall be taken until such approval is granted. Any county board of education affected or either local board of education involved may submit the controversy to the state department of public instruction within ten days after the decision of the county board or county boards of education.

"4. If approved as set forth above, an election shall be held as provided in this chapter in said school district not operating a high school and if approved by a majority of those voting, said district shall become merged with said high school district on the July 1 following said election."

The facts are not disputed. The parties submitted this case to the trial court on the following stipulation:

"Plaintiffs and defendants hereby stipulate and agree as follows:

"1. All statutory requirements for the due merger of the Community School District of Walcott in the Counties of Muscatine and Scott, State of Iowa, into The Davenport Community School District, in the County of Scott, State of Iowa, pursuant to section 275.40 of the Iowa Code, have been complied with in full, with the sole exception that the parties are in dispute as to the legality of the Petition of Objection filed by certain of the plaintiffs in opposition to the merger.

"2. The said Petition of Objection filed May 24, 1965, in opposition to the merger was signed by 524 electors of said The Davenport Community School District, which was more than 20% of the total electors of said school district and more than

400 electors of said school district, as the term 'electors' is defined in Article 2, section 1 of the Constitution of the State of Iowa. Said Petition, however, was signed by less than 20% of the registered voters.

"3. Registration of voters is required for voting in the said The Davenport Community School District.

"4. The language of section 275.40 of the Iowa Code, relating to a petition of objection, refers to 20% of the number of 'eligible voters', and to 'four hundred voters'. If these references are to 'electors' as defined in Article 2, section 1 of the Iowa Constitution, the said Petition of Objection was in proper form and duly filed, the merger proceedings thereafter taken were without legal effect, and said merger should be declared null and void. If such statutory references require that such signers be 'registered' voters, however, said Petition of Objection did not comply with the statutory requirements, was of no legal effect, and the said merger should be declared to have been fully and lawfully consummated."

I. Electors are persons possessing the qualifications to vote prescribed by Article II, section 1, of the Iowa Constitution. It provides: "Electors. SECTION 1. Every citizen of the United States, of the age of twenty one years, who shall have been a resident of this State six months next preceding the election, and of the County in which he claims his vote sixty days, shall be entitled to vote at all elections which are now or hereafter may be authorised by law."

The meaning of "electors" is not subject to arguments, it is a word of art which we have construed to refer to the definition in Article II, section 1, of the Iowa Constitution. Edmonds v. Banbury, 28 Iowa 267, 4 Am. Rep. 177; Piuser v. City of Sioux City, 220 Iowa 308, 262 N.W. 551, 100 A. L. R. 1298.

II. Whenever the legislature employs the word "elector" without qualification or explanation the word may be assumed to have reference to a person authorized by the constitution to exercise the elective franchise. McEvoy v. Christensen, 178 Iowa 1180, 159 N.W. 179; Sears v. City of Maquoketa, 183 Iowa 1104, 166 N.W. 700; Piuser v. City of Sioux City, supra.

We believe some significance must be given the fact

"elector" is not used in section 275.40 although it is used in several other sections of chapter 275. In the absence of anything to indicate a different intention, we presume the legislature used statutory terms in their judicially established meaning. Lever Brothers Co. v. Erbe, 249 Iowa 454, 465, 87 N.W.2d 469, 477, and citations.

III. The rule is well established that the right to one possessing the qualifications of an elector, as prescribed by the State Constitution, cannot be destroyed or impaired by the legislature, it may nevertheless, regulate the exercise thereof by enacting reasonable registration statutes. Piuser v. City of Sioux City, supra, 220 Iowa 308, 314, 262 N.W. 551, 554, 100 A. L. R. 1298, and citations. Our registration laws are set out in chapter 48, Code, 1962.

As stated in paragraph 3 of the stipulation registration is required for voting in The Davenport Community School District. Thus we find not every elector is entitled to cast a ballot. Under our laws, all voters must be electors, but the converse is not true.

IV. The word "voter" is not defined by the Iowa Constitution. It is not a word of art with a precise and unchanging definition. Construction of its meaning and the words "eligible voters" as used in section 275.40 is here presented for the first time. Other jurisdictions have dealt with somewhat similar questions, but in the particular statutory contexts involved. See annotation, 100 A. L. R. 1308; 44A Words and Phrases, Perm. Ed., pages 11–13.

In Caton v. Frank, 56 Nev. 56, 44 P.2d 521, it is held a petition signed by sixty percent of the "qualified electors" of a city did not comply with a statute requiring the signatures of sixty percent of the "qualified voters". The difference was voter registration.

In In re Opinion of the Justices, 247 Mass. 583, 143 N.E. 142, it is held the phrase "legal voters" means voters qualified under the State Constitution who had also complied with the voter registration laws of Massachusetts.

In State ex rel. Mullen v. Howell, 108 Wash. 340, 184 P. 333, 334, the court held a referendum petition to be signed by

"legal voters" meant registered voters and said: "The rule is sensible, salutary and sound."

In Coffey v. Anderson, Ky., 371 S.W.2d 624, it is held for the purpose of determining if a majority of the "voters" of an area had signed a petition seeking detachment of the area from one county and attachment to another, the term "voters" includes only registered voters and does not include persons qualified but not actually registered. Four contrary decisions are therein overruled. At page 626, 371 S.W.2d, the court says: "Under the cases holding that one who has the right to register but has not done so is nevertheless a 'voter,' it would be incumbent on the petitioners in a case such as this to seek out and establish the number of persons in the area who, in addition to those already registered, were not registered but had the right to register. Being of the opinion that in many instances this would be impracticable and an unreasonable burden, we have reconsidered the question of proper definition and have concluded that registration is one of the essential qualifications of a 'voter.' "

Howell v. Wilson, Ky., 371 S.W.2d 627, 629, says: "This Court has reviewed its cases on the point and has decided that, in addition to the prescribed constitutional and statutory requirements, registration is one of the essential elements of a voter, legal voter, qualified voter, or the like."

Bergevin v. Curtz, 127 Cal. 86, 89, 59 P. 312, 313, quotes the following from Sanford v. Prentice, 28 Wis. 358, 362: " 'There is a difference between an elector or a person legally qualified to vote and a voter. In common parlance, they may be used indiscriminately, but, strictly speaking, they are not the same. The voter is the elector who votes—the elector in the exercise of his franchise or privilege of voting—and not he who does not vote.' "

V. In Mills v. Hallgren, 146 Iowa 215, 220, 221, 124 N.W. 1077, 1079, we say: "The word [voters], as ordinarily used, has two meanings: Persons who perform the act of voting, and persons who have the qualifications entitling them to vote. * * * The meaning of the word 'voters' depends on the connection in which used, and is not always equivalent to 'electors'."

The Act, now section 275.40, became effective on publication

May 14, 1959. Prior thereto such merger as involved here was limited to the procedure prescribed in sections 275.12 to 275.23 inclusive, which requires formation of a proposed new school district be started by filing a petition containing details of the proposal, hearing before the county board or boards and ultimately a special election in each of the affected districts. Section 275.40 makes clear the legislature enacted it for the purpose of providing an alternative procedure for school districts not operating a high school to merge with a contiguous high school district. The legislature apparently felt a simplified and more direct procedure should be available under these circumstances.

In Wapello County Bd. of Educ. v. Jefferson County Bd. of Educ., 253 Iowa 1072, 1077, 115 N.W.2d 212, 215, we say: "As to contiguous high-school and non-high-school districts it apparently felt the procedure outlined in sections 275.12 through 275.23 was not in all cases the best; that some less cumbersome and technical method was needed; and it acted accordingly."

Code section 275.1 expresses the legislative intent to encourage the reorganization of school districts into more economic and efficient units. In matters of reorganization of school districts we have consistently said we will liberally construe the law with a view to effectuate the legislative intent. Wapello County Bd. v. Jefferson County Bd., supra, and citations.

The trial court's determination of the meaning of "voters" and "eligible voters" as used in section 275.40 is consistent with a less cumbersome and technical method for the proposed merger. Davenport with a population of almost 100,000 people presents a more difficult problem of determining who are electors as compared to an examination of the registration records.

To us it is not logical to assume the legislature intended electors could defeat the proposed merger by signing protest petitions and yet if an election was then being held under the procedure prescribed by sections 275.12 to 275.23 inclusive be unable to vote because of not being registered.

We conclude the decree and judgment of the trial court is correct.—Affirmed.

All JUSTICES concur.